Thompson v. Am. Lbr. & Mfg. Co.

W. H. THOMPSON *et al. v.* AMERICAN LUMBER & MFG. CO.*

(*Knoxville.* September Term, 1923.)

1. CREDITORS' SUIT. Procedure in general creditors' proceeding stated.

In a general creditors' proceeding, creditors may come in by formal petition, or otherwise may informally present their claims, and, after a hearing had in more or less informal manner, the chancellor determines upon the entire record, and all the facts before him, the rights of the various creditors as against the fund for distribution, and as between themselves. (*Post, pp.* 470, 471.)

2. BANKRUPTCY. "Preference" defined.

A transfer made within four months of the filing of the petition in bankruptcy when the debtor is insolvent and the creditor has reasonable cause so to believe constitutes a "preference." (*Post, p.* 471.)

3. BANKRUPTCY. Transfer applicable to antecedent debt a preference irrespective of belief as to insolvency.

If a transfer made within four months of the filing of the petition in bankruptcy is made partly for a present consideration, and partly for an antecedent or pre-existing debt, that portion of the transfer applicable to the antecedent or pre-existing debt will be set aside as a preference, regardless of whether the creditor knew or had reasonable cause to believe that the debtor was insolvent. (*Post, p.* 471.)

---

*On delivery of property on eve of bankruptcy to one holding executory contract therefor made within the four months period as constituting a preference, see note in 21 L. R. A. (N. S.), 901.

On validity of transfer to secure pre-existing debt within four months of bankruptcy, in absence of any intent of the part of the debtor to hinder, delay, or defraud creditors, or of reasonable cause on the part of the creditor to believe that it was intended as a preference, see note in 15 L. R. A. (N. S.), 372.

4. **BANKRUPTCY.** Transfer of note to bank to secure pre-existing debt held a preference.

Transfer of note to a bank, within four months of filing of petition to have maker adjudged a bankrupt, as collateral to secure payment of indebtedness created at time of transfer, and also a pre-existing debt, will be set aside as a preference in so far as note secured pre-existing debt, regardless of whether the bank had reasonable ground to believe that the maker was insolvent at the time. (*Post, pp.* 471-473.)

FROM GREENE.

Appeal from the Chancery Court of Greene County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. HAL H. HAYNES, Chancellor.

SHOUN, SWINGLE & TAYLOR, for Thompson.

SUSONG & BIDDLE, for Lbr. & Mfg. Co.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill herein was filed by the trustee in bankruptcy for J. C. Jeralds, bankrupt, to foreclose a vendor's lien evidenced by certain notes executed by the defendant corporation to Jeralds. The insolvency of the defendant corporation was alleged and admitted, and Thompson made receiver, and a decree duly entered ordering claims of creditors to be presented by petition. The controversy arises over the application of the *pro rata* proceeds of one of the vendor lien notes in the sum of $3,000. The origi-

nal payee, Jeralds, had indorsed and delivered to one Lamons all of the series of notes, aggregating $15,000, including the particular note in controversy, to indemnify Lamons against loss as surety for Jeralds on a loan of $5,000 from the First National Bank in Greeneville.

When the real estate was sold under the order of court it fell far short of realizing the lien indebtedness, the *pro rata* applicable to the note of $3,000 in question being less than $1,000. A petition was filed in the cause by Citizens' Savings Bank of Greeneville alleging that it was the holder of the $3,000 lien note as a pledgee to secure certain indebtedness, and praying to be paid the *pro rata* represented by this claim out of the funds.

It appears from the record and the finding of facts by the court of civil appeals that, after having pledged this $3,000 note with other notes of the series to Lamons, as already stated, Lamons turned over to Jeralds this note of $3,000 in order that Jeralds might use it as collateral to secure a certain note of $2,000 executed by Jeralds to certain parties, dated August 1 and maturing November 1, 1917, which $2,000 note was indorsed by these parties and discounted by Citizens' Savings Bank, and to which was attached as collateral, in addition to the $3,000 note, a certain other note of $2,000 executed by American Lumber Manufacturing Company and indorsed by one Haws. This latter note was paid in November, soon after it matured, and the proceeds applied in full payment of the $2,000 note executed by Jeralds, to secure which he had also pledged the $3,000 lien note turned over to him by Lamons for that purpose.

Nothing more appearing, upon payment of the $2000 indebtedness to the Citizens' Savings Bank, the $3,000 lien

note would have been returned to Jeralds, and by Jeralds to Lamons, and the *pro rata* applicable thereto would have been paid over to Lamons, or upon the debt he had secured for Jeralds; but it further appears that the $2,000 note executed by Jeralds to said parties and indorsed by them to Citizens' Savings Bank contained a clause common to bank note forms, providing that any collateral deposited with the bank to secure payment of the principal note should be applicable, at the discretion of the cashier, to any other note or claim held by the bank against the maker; and it so happened that the Citizens' Savings Bank was the holder of certain other indebtedness evidenced by three notes executed by Jeralds in 1915, and long past due, on which balances remained unpaid, aggregating something less than $1,500, and when, after payment of the $2,000 note dated August 1, Jeralds called upon the bank for the return of the $3,000 lien note in order that he might in turn redeliver it to Lamons, the bank declined to deliver up the note, insisting upon its right to hold it and apply the proceeds to the notes executed in 1915, above described. It further appears that three of the payees, Lancaster, Smith, and Bernard, in the $2,000 note made by Jeralds in August, 1917, were also payees, and liable as indorsers, upon these old notes, dated in 1915, and it was at the request or demand of one or more of them, and for their benefit, that the bank sought to hold and apply upon this old debt the $3,000 collateral note. After the Citizens' Savings Bank filed its petition in this cause setting up its claim proof was taken. The chancellor dismissed the petition, and the court of civil appeals has affirmed his decree, finding that the $3,000 lien note had been indorsed by Jeralds and delivered to Lamons as

collateral security, as hereinbefore recited, and had been redelivered by Lamons to Jerald for the express and single purpose of securing the specific indebtedness of $2,000 above described, with the agreement that it was to be returned to Lamons upon the payment of this $2,000 indebtedness, and that the rights of Lamons as the rightful holder and pledgee were superior to those of the bank based upon the said old indebtedness.

While the conclusion reached by the chancellor was the same, it appears that he based his finding upon another theory, not, however, wholly inconsistent with the above. As already stated, the petition of the bank in this case was filed in a general creditors' proceeding, in which the bankruptcy of Jeralds had been made to appear, an involuntary petition having been filed against him in October, 1917, soon after the pledging of this $3,000 note on the 1st day of August, followed by an adjudication in November. It thus appears that Jeralds made the pledge of the $3,000 note to secure the loan of $2,000 made by the Citizens' Bank within four months of the filing of the petition in bankruptcy against him. Under the well-recognized practice in such cases creditors may come in by formal petition, or otherwise may informally present their claims, and hearings are had in more or less informal manner, and the chancellor determines, upon the entire record and all the facts before him, the rights of the various creditors as against the fund for distribution and as between themselves. In the present case, having found that the claim of Citizens' Savings Bank for priority in distribution of the assets was based upon a note pledged with the bank as collateral, and that the bank had received payment in full of the indebtedness for which the

pledge had been made, except so much thereof as was represented by a long past due and pre-existing claim held by the bank prior to the making of the pledge, and that the pledge had been made within four months of the filing of the petition in bankruptcy, the chancellor declined to recognize the claim of priority.

It is insisted that this finding of the court was not justified because of lack of proper pleadings, and that, furthermore, the record does not contain sufficient evidence of insolvency on the part of Jeralds and of knowledge on the part of the creditor at the time of the delivery of the pledge to sustain the transaction as a preference.

The original bill filed by Jeralds' trustee in bankruptcy set up the bankruptcy of Jeralds, and it was admitted in the answer and is not questioned in the petition of the bank. In effect, petitioner bank adopts and ratifies the proceedings in the cause by which the fund in court has been realized, and prays to be paid its *pro rata* as a preference as the holder of the pledged note of $3,000. The issue was therefore fairly presented as to whether or not the petitioner was entitled to receive from the bankrupt's funds this priority payment.

It is well recognized that a transfer made within four months of the filing of the petition in bankruptcy, when the debtor is insolvent and when the creditor has reasonable cause so to believe, these conditions concurring, constitutes a preference. And it is also well settled that, if a transfer is made partly for a present consideration and partly for an antecedent or pre-existing debt, as in the present case, only so much of the transfer as is applicable to the present consideration will be sustained, the

remainder being set aside as a preference. 2 Collier (12th Ed.), p. 890.

Adopting the theory of the bank, this pledge was made to secure $2,000 advanced at the time, which was paid, and the collateral note "was then taken by the bank and put up behind certain other indebtedness due from Jeralds to said bank," this other indebtedness being long pre-existing. So far, then, as petitioner now seeks to assert a claim for priority as the holder of this collateral, it is on account of this antecedent debt. The pledge having been made within four months, the debtor being insolvent, it is not necessary in such a case to show knowledge, or reasonable cause for knowledge or belief, on the part of the creditor. Supported by ample authority Mr. Collier (12th Ed., p. 910) thus states the rule:

"It is not necessary for a creditor to know or have reasonable cause to believe that the debtor was insolvent, where a mortgage or pledge is made within the four months period to secure an antecedent debt."

But, even if this exception to the general rule did not exist, there are circumstances—such as the fact that this bank had itself been carrying for two years Jeralds' old past-due notes—which under the rule would probable be sufficient to charge the bank with notice of his insolvency at the time the pledge was taken. Moreover, the "discretion" or option reserved to the cashier to apply this collateral to other debts held by the bank was not in fact exercised until after payment of the $2,000 note due November 1st, and actually paid later, and the petition in bankruptcy had been filed against Jeralds in October. This fixes his insolvency as at least of this date, and also was notice to all.

Thompson v. Am. Lbr. & Mfg. Co.

It was within the discretion of the chancellor, having reached the conclusion that a preference would result from the allowance of the claim of petitioning bank, to dismiss the petition; and, in view of the conclusion reached by this court, as above indicated, that he is sustained by the record, it is unnecessary to discuss other questions presented by counsel, or by the opinion of the court of civil appeals.

The decree of the chancellor and of the court of civil appeals is affirmed.